IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>JRV GROUP USA L.P., *et al.*,<br><br>Debtor. | ) <br>) Chapter 11<br>) <br>) Case No. 19-11095 (CSS)<br>) |
| RC JRV TRUST CO. LLC, in its capacity as Trustee of the Liquidation Trust of JRV Group USA L.P.,<br><br>Plaintiff,<br><br>v.<br><br>BARNES & THORNBURG LLP,<br><br>Defendant. | ) <br>) <br>) <br>) <br>) <br>) Adv. Proc. No. 21-51161 (CSS)<br>) <br>) <br>) <br>) |
| BARNES & THORNBURG LLP,<br><br>Appellant,<br><br>v.<br><br>RC JRV TRUST CO. LLC, in its capacity as Trustee of the Liquidation Trust of JRV Group USA L.P.,<br><br>Appellee. | ) <br>) <br>) <br>) <br>) Appeal from the United States Bankruptcy<br>) Court for the District of Delaware<br>) <br>) <br>) <br>) <br>) |

**BARNES & THORNBURG LLP'S MOTION FOR LEAVE TO
ALLOW INTERLOCUTORY APPEAL OF THE ORDER
DENYING THE MOTION TO DISMISS THE COMPLAINT**

Pursuant to 28 U.S.C. § 158(a)(3) and Federal Rule of Bankruptcy Procedure 8004, Appellant Barnes & Thornburg LLP ("B&T") hereby moves (the "Motion") for leave to appeal the *Order* [Adv. D.I. 11] (the "Order"), entered on February 24, 2022, by the United States Bankruptcy Court for the District of Delaware denying B&T's *Motion to Dismiss Complaint*

1

*Pursuant to Fed. R. Civ. P. 12(b)(2), (4), (5), and (6) for Lack of Personal Jurisdiction, Insufficient Process, Insufficient Service of Process, and Failure to State a Claim Upon Which Relief Can Be Granted* [Adv. D.I. 4] (the "Motion to Dismiss").  A copy of the Order is attached hereto as **Exhibit 1**.  In support of its Motion, B&T respectfully submits as follows:

## PRELIMINARY STATEMENT

1. B&T seeks leave to appeal in order to resolve the jurisdictional question as to whether the Bankruptcy Court can even hear the adversary proceeding against B&T as well as the controlling legal question as to whether the claims are barred by the explicit language of prior releases approved by the Bankruptcy Court.  Allowing the adversary proceeding to go forward would harm B&T by violating fundamental jurisdictional and due process requirements for a timely issued summons and by depriving B&T the protection of the release. These harms cannot be undone by an appeal after the adversary proceeding concludes. These issues should be conclusively resolved now because waiting until final judgment would prove inefficient and a waste of judicial resources.

2. An appeal is necessary because the Order violates binding Third Circuit precedent and would inappropriately limit negotiated and approved third-party releases.  Moreover, the Order did so without explanation and without affording oral argument to the parties, which was requested.

3. Leave to appeal should be granted given that well-established law and prior final orders of the Bankruptcy Court implore a different result than the Order.  The procedural irregularities of both the Trustee and the Bankruptcy Court provide further support to justify immediate appellate review of the Order.  Without immediate appellate review, the parties will be left litigating legally invalid claims in a court lacking jurisdiction.

## JURISDICTIONAL STATEMENT

4.  B&T seeks interlocutory review of the Order pursuant to 28 U.S.C. § 158(a)(3). This Motion, and the accompanying Notice of Appeal, are timely under Fed. R. Bankr. P. 8002 and 8004(a)(1) as they are being filed within fourteen (14) days after entry of the Order.

5.  B&T filed its appearance in the Bankruptcy Court only for the purpose of filing the Motion to Dismiss. B&T has not consented to the jurisdiction, personal or otherwise, of the Bankruptcy Court.

6.  Though filed with the Bankruptcy Court, this Motion is properly directed to the United States District Court for the District of Delaware.

## FACTS NECESSARY FOR THE QUESTIONS PRESENTED

**A.  Bankruptcy Proceedings**

7.  This is an appeal arising out of the bankruptcy case of JRV Group USA L.P. (the "Debtor"). On May 13, 2019 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") commencing Case No. 19-11095.

8.  On the Petition Date, the Debtor also filed the *Motion of Debtor for Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 and Fed. R. Bankr. P. 2002, 4001, 6004 and 9014 (i) Authorizing Debtor to Obtain Senior Secured, Superproriority, Postpetition Financing, (ii) Granting Liens and Superpriority Claims, (iii) Approving Use of Cash Collateral of Prepetition Lenders, (iv) Granting Adequate Protection to Prepetition Lenders, (v) Modifying the Automatic Stay, (vi) Scheduling Final Hearing, and (vii) Granting Related Relief* [D.I. 7] (the "DIP Motion"). In Paragraph 12(a) of the DIP Motion, the Debtor detailed its pre-

petition secured lenders as JRV Group Holding USA L.P. ("Holding") and Corner Flag LLC ("Corner Flag," and together with Holding, the "Prepetition Lenders"). [*DIP Mot.* 9–11.] In Paragraph 14 of the DIP Motion, the Debtor agreed and stipulated that:

> as of the date of the Interim Order, the Debtor and its estate have no claim (as defined in the Bankruptcy Code), objection, challenge, defense, counterclaim or cause of action against any of the Prepetition Lenders or any of their respective affiliates, subsidiaries, agents, officers, directors, shareholders, employees, members, managers, agents, attorneys, advisors, professionals, predecessors in interest, successors and assigns (solely in their respective capacities as such) (collectively, the "Prepetition Released Parties") of any kind or nature whatsoever, arising under applicable state or federal law (including, without limitation, any so-called lender liability or equitable subordination claims or defenses, any right to assert any disgorgement or recovery, recharacterization, contribution, subordination, impairment, avoidance or other claims (whether arising under or pursuant to section 105, 510 or 542 through 553 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law or otherwise), arising under, in connection with or related to any of the Prepetition Loan Documents, the Prepetition Obligations or the Prepetition Liens), and the Debtor on behalf of itself and its estate hereby forever waives and releases any and all such claims, objections, challenges, defenses, counterclaims or causes of action.

9.     Prior to and after the Petition Date, B&T represented Holding as its attorneys. Based on this representation and the DIP Motion, the Debtor stipulated that it had no claim or cause of action against B&T, and waived and released any such claims or causes of action.

10.     On May 15, 2019, the Bankruptcy Court entered an interim order granting the DIP Motion [D.I. 29] (the "Interim DIP Order"). The Interim DIP Order confirmed the Debtor's stipulations, waivers, and releases in the DIP Motion. [*Interim DIP Order* 6–12.] The Interim DIP Order further reserved certain third party rights with respect to the Debtor's stipulations, waivers, and releases, stating that such stipulations, waivers, and releases "are and shall be binding upon the Debtor's estate, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative appointed in the Case or any Successor Case and all parties-in-interest, including, without limitation, any Committee and any person or entity acting on behalf

of the Debtor's estate," unless an adversary proceeding or contested matter is commenced on or before July 29, 2019, "objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Obligations, the Prepetition Liens or the Prepetition Loan Documents (as applicable) or otherwise asserting or prosecuting any other claims, counterclaims, causes of action, objections or challenges against the Prepetition Released Parties in connection with the Prepetition Obligations, the Prepetition Liens or the Prepetition Loan Documents[.]". [*Id.* at 34–35.]

11. On June 13, 2019, the U.S. Trustee filed an objection to the DIP Motion [D.I. 61] (the "DIP Objection"). The DIP Objection was the only objection to the DIP Motion. The DIP Objection specifically challenged the proposed releases in the DIP Motion. However, the DIP Objection did not challenge "the amount, validity, perfection, enforceability, priority or extent of the Prepetition Obligations, the Prepetition Liens or the Prepetition Loan Documents (as applicable) or otherwise assert[] or prosecut[e] any other claims, counterclaims, causes of action, objections or challenges against the Prepetition Released Parties in connection with the Prepetition Obligations, the Prepetition Liens or the Prepetition Loan Documents."

12. On August 4, 2020, the Bankruptcy Court entered the final order granting the DIP Motion [D.I. 473] (the "Final DIP Order"). In the Final DIP Order, the Bankruptcy Court reaffirmed the Debtor's stipulations, waivers, and releases in the DIP Motion.[1] [*Final DIP Order*

---

[1] The Final Order did slightly revise the definition of "Prepetition Released Parties" to exclude "any person to the extent subject to a Permitted Action (as defined in the Combined Plan and Disclosure Statement)." [*Final Order* 12.] This change does not affect the release of B&T. In the Combined Plan and Disclosure Statement [ECF No. 449], the term "Permitted Action" expressly excludes "any claims or causes or action against the Released Shareholders, the Secured Lenders, or other Affiliate Released Parties." [*Plan* § 1.76.] The term "Released Shareholders" includes Holding and its "attorneys." [*Id.* § 1.94.] Because B&T is and has been counsel to Holding, it is a "Released Shareholder" and shall not be the subject of a "Permitted Action." Accordingly, this revised definition does not negate the release of B&T.

6–12.] However, the Final DIP Order provided that such stipulations, waivers, and releases would not become effective until "the effective date of a chapter 11 plan." [*Id.* at 35.]

13. On August 6, 2020, the Debtor filed a notice with the Bankruptcy Court [D.I. 474] identifying August 5, 2020, as the "Effective Date" of the Debtor's chapter 11 plan of liquidation.

14. No adversary proceeding was filed against B&T prior to September 14, 2021, over a year after the Effective Date, which is when the release in the Final DIP Order became effective, and over two years after the release in the Interim DIP Order became effective.

**B.      Commencement of Adversary Proceeding**

15. On September 14, 2021, Plaintiff RC JRV Trust Co. LLC, in its capacity as Trustee of the Liquidation Trust of JRV Group USA L.P. (the "Trustee"), filed its *Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 547, 548, 549, and 550 and to Disallow Claims Pursuant to 11 U.S.C. § 502* [Adv. D.I. 1] (the "Complaint") in the Bankruptcy Court, seeking to recover allegedly preferential and fraudulent transfers totaling $551,439.61 from B&T. The Bankruptcy Court's docket entry for the filing of the Complaint states, "AP Summons Served due date: 12/13/2021."

16. After filing the Complaint, counsel for the Trustee sent an email to counsel for B&T (the "First Email") stating, "Attached please find a time-stamped copy of the complaint filed today in this matter and let us know if you will accept service of it on behalf of B&T."

17. In less than two hours after receiving the First Email, counsel for B&T sent a response email to counsel for the Trustee (the "Second Email") stating, "Yes, I will accept service."

18. From the filing of the Complaint on September 14, 2021, through December 8, 2021, no further filings were made in this adversary proceeding. On December 8, 2021, the Trustee filed its *Affidavit of Service* [Adv. D.I. 3] (the "Service Affidavit"), whereby counsel for the

Trustee stated that he caused a copy of the Complaint to be served on B&T. The Service Affidavit did not reference any summons.

19. The Trustee never drafted a summons or filed a summons with the Court.

20. Based on the Bankruptcy Court's docket, and Fed. R. Civ. P. 4(m), the Trustee was to serve a summons on B&T by December 13, 2021. This never occurred.

21. Based on the Trustee's failure to timely obtain and serve a summons on B&T, on December 17, 2021, B&T filed its Motion to Dismiss, along with a corresponding brief in support, seeking to dismiss the Complaint in its entirety based on, *inter alia*, lack of personal jurisdiction (due to the failure to timely obtain and serve a summons) and the failure to state a claim upon which relief may be granted (due to the releases afforded to B&T under the Interim DIP Order and the Final DIP Order).

22. On January 14, 2022, the Trustee filed a brief in opposition to the Motion to Dismiss [Adv. D.I. 7] (the "Response Brief"), and B&T filed a reply brief in support of the Motion to Dismiss [Adv. D.I. 8] on January 28, 2022.

23. On January 31, 2022, the Trustee filed a request for oral argument [Adv. D.I. 9].

24. On February 24, 2022, the Bankruptcy Court entered the Order, denying the Motion. The Order did not include any explanation for the denial.

25. Contemporaneously with the filing of this Motion, B&T is also filing its Notice of Appeal, seeking to appeal the Order.

## STATEMENT OF QUESTIONS PRESENTED

26. The primary questions presented in this appeal are as follows:

   a. Did the Bankruptcy Court commit legal error in not following *Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565 (3d Cir. 1996), and in not dismissing the Complaint for lack of personal jurisdiction as a matter of law (the "Jurisdiction Ruling")?

   b. Did the Bankruptcy Court commit legal error in determining that B&T was not released in accordance with the express language of the Interim DIP Order and/or the Final DIP Order as a matter of law (the "Release Ruling")?

## RELIEF SOUGHT

27. By this Motion, B&T requests that the Court grant B&T leave to appeal the Order as an interlocutory order appealable under 28 U.S.C. § 158(a)(3).

## ARGUMENT

28. Leave to appeal the Order should be granted because the Order involves controlling questions of law the immediate resolution of which will materially advance the ultimate determination of the pending litigation.

**A.   Applicable Standard for Reviewing Interlocutory Order**

29. Under 28 U.S.C. § 158(a)(3), "The district courts of the United States shall have jurisdiction to hear appeals . . . with leave of the court, from other interlocutory orders and decrees of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." Thus, the Court has the discretion to grant leave to parties in bankruptcy proceedings to appeal a non-final order under this provision. *E.g., Bertoli v. D'Avella (Matter of Bertoli)*, 58 B.R. 992 (D.N.J. 1986), *aff'd*, 812 F.2d 136 (3d Cir. 1987); *Stanziale v. Sun Nat'l Bank (In re Dwek)*, No. 3:09-cv-5046, 2010 WL 234938 (D.N.J. Jan. 15, 2010); *Popular Leasing U.S.A., Inc. v. Forman*, No. 09-2788, 2009 WL 2969519 (D.N.J. Sept. 14, 2009); *Bonwit Teller, Inc. v. Jewelmasters, Inc. (In re Hooker Invs.)*, No. M-47 (JFK), 1994 WL 49013 (S.D.N.Y. Feb.

8

17, 1994). Although 28 U.S.C. § 158(a)(3) provides no guidance for how to exercise such discretion, courts in the Third Circuit imported the criteria of 28 U.S.C. § 1292(b) to determine when granting leave to appeal an interlocutory order of a bankruptcy court is appropriate. *E.g., Bertoli v. D'Avella (Matter of Bertoli)*, 58 B.R. 992 (D.N.J. 1986), *aff'd*, 812 F.2d 136 (3d Cir. 1987); *Stanziale v. Sun Nat'l Bank (In re Dwek)*, No. 3:09-cv-5046, 2010 WL 234938, at *2; *Popular Leasing U.S.A., Inc. v. Forman*, No. 09-2788, 2009 WL 2969519, at *3.

30. Under 28 U.S.C. § 1292(b), an interlocutory order is appealable if: (i) it involves a controlling question of law; (ii) there is substantial ground for a difference of opinion as to its correctness; and (iii) if appealed immediately, a decision on the order may materially advance the ultimate termination of the litigation. *See Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974). Both the Jurisdiction Ruling and the Release Ruling satisfy each of these three requirements.

**B.    The Jurisdiction Ruling and the Release Ruling Each Constitutes a "Controlling Question of Law."**

31. The Order is immediately appealable because it rules on controlling questions of law. "A controlling question of law must encompass at the very least every order which, if erroneous, would be reversible error on final appeal." *Katz v. Carte Blanche Corp.* 496 F.2d 747, 755 (3d Cir. 1974). A "clear case" of a controlling question of law is "one which would result in a reversal of a judgment after final hearing." *Id*. The underlying policy of this prong of § 1292(b) is to protect parties "from a possibly erroneous interlocutory order and the avoidance of possibly wasted trial time and litigation expense." *Id.* at 756.

32. The Jurisdiction Ruling and the Release Ruling are both controlling questions of law. With respect to the Jurisdiction Ruling, if it is determined that the Bankruptcy Court did not have personal jurisdiction over B&T, then the Complaint must be dismissed under Fed. R. Civ. P.

12(b)(2) in accordance with controlling Third Circuit law: *Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565 (3d Cir. 1996); *see Facebook Inc. v. Namecheap Inc.*, No. CV-20-00470, 2021 WL 961771, at * (D. Ariz. March 15, 2021) (certifying interlocutory appeal based on denial of motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2)); *Gilmore v. Jones*, No. 3:18-cv-00017, 2019 WL 4417490, at *3 (W.D. Va. Sept. 16, 2019) (holding that denial of motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) would be a "controlling" question where all but one defendant would be dismissed if motion were granted, and citing *Katz*); *Astrazeneca AB v. Aurobindo Pharma Ltd.*, No. 14-664-GMS, 2014 WL 7533913, at *1 n.1 (D. Del. Dec. 17, 2014) (granting motion for certification of interlocutory appeal based on denial of motion to dismiss for lack of personal jurisdiction).

33. With respect to the Release Ruling, if it is determined on appeal that the releases granted under either the Interim DIP Order or the Final DIP Order release B&T from avoidance actions under Chapter 5 of the Bankruptcy Code, then the Complaint must be dismissed under Fed. R. Civ. P. 12(b)(6), incorporated in this case pursuant to Fed. R. Bankr. P. 7012.

34. Because both the Jurisdiction Ruling and the Release Ruling are controlling questions of law, the first requirement for an interlocutory appeal is satisfied.

C. **There Are Substantial Grounds for a Difference of Opinion as to the Correctness of the Jurisdiction Ruling and the Release Ruling.**

35. The Jurisdiction Ruling and the Release Ruling present substantial grounds for a difference of opinion as to the correctness of the Order. To satisfy this prong of § 1292(b), there must be more than a mere disagreement with the Bankruptcy Court's ruling, but rather, a genuine doubt as to whether the Bankruptcy Court applied the correct legal standard. *See Reese v. B.P. Expl. (Ala.) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (holding that this prong is satisfied when the appeal "involves an issue over which reasonable judges might differ"); *Crystallex Int'l Corp. v.*

*Petroleos de Venezuela, S.A.*, No. 15-1082-LPS, 2016 WL 7440471, at *2 (D. Del. Dec. 27, 2016) (holding that to satisfy this prong, there is not a requirement that there be conflicting decisions by courts grappling with the underlying issue). This standard is satisfied if "the bankruptcy court's decision is contrary to well-established law." *In re Marvel Entm't Group, Inc.*, 209 B.R. 832, 837 (D. Del. 1997).

   i. **The Order Is Contrary to Controlling Third Circuit Law.**

  36. The Order directly contradicts controlling Third Circuit law: *Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565 (3d Cir. 1996). In *Ayres*, the Third Circuit held that where a plaintiff fails to timely obtain a summons, the plaintiff's complaint *must* be dismissed under Fed. R. Civ. P. 12(b)(2). "The issuance of a summons signed by the Clerk, with the seal of the Court, and the time designated within which defendant is required to appear and attend, are essential elements of the court's personal jurisdiction over the defendant." *Ayres*, 99 F.3d at 568. "The failure of a plaintiff to obtain valid process from the court to provide it with personal jurisdiction over the defendant in a civil case is fatal to the plaintiff's case." *Id.* at 569. "Upon proper motion, or if the defendant raises the matter in the responsive pleading, such suit *should* be dismissed under Fed.R.Civ.P. 12(b)(2)." *Id.* (emphasis added).

  37. The *Ayres* court did not equivocate. The *Ayres* court was not ambiguous. The plaintiff in *Ayres* failed to timely request or obtain a summons. The fact that the defendant had notice of the plaintiff's claim was wholly irrelevant. *Id.* ("Notice of a claim is not sufficient."). When the plaintiff failed to timely obtain a summons by the Fed. R. Civ. P. 4(m) deadline, the defendant filed a motion to dismiss under Rule 12(b)(2). Under such circumstances, the Third Circuit held the lawsuit must be dismissed. *Id.*

38. Here, the same result—dismissal—is required. It is undisputed that the Trustee failed to obtain a summons by the Fed. R. Civ. P. 4(m) deadline. It is undisputed that B&T filed a motion to dismiss under Rule 12(b)(2), incorporated by Fed. R. Bankr. P. 7012. Given these limited facts and the controlling law of *Ayres*, the Bankruptcy Court was required to dismiss the Complaint. The failure to do so is contrary to well-established law. *In re Marvel Entm't Group, Inc.*, 209 B.R. 832, 837 (D. Del. 1997). At a minimum, the Order represents the Bankruptcy Court's disagreement with the holding in *Ayres*.

      **ii.**    **The Order Is Contrary to the Express Language in the Interim DIP Order and the Final DIP Order.**

39. Beyond the Jurisdiction Ruling, there are "substantial grounds for a difference of opinion" on the Release Ruling too. The express language of the Interim DIP Order and the Final DIP Order released B&T from avoidance actions under Chapter 5 of the Bankruptcy Code. There is no dispute that B&T is one of the "Prepetition Released Parties" (as defined in the DIP Motion). The DIP Motion provided that the Debtor had no claim, objection challenge, defense, counterclaim, or cause of action against the Prepetition Released Parties, and, further, "the Debtor on behalf of itself and its estate [] forever waive[d] and release[d] any and all such claims, objections, challenges, defenses, counterclaims or causes of action." [*DIP Mot.* ¶ 14.] The Interim Order then validated such releases, providing that the Debtor's stipulations, waivers, and releases in the DIP Motion "are and shall be binding upon the Debtor's estate, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative appointed in the Case or any Successor Case and all parties-in-interest, including, without limitation, any Committee and any person or entity acting on behalf of the Debtor's estate," unless an adversary proceeding or contested matter is commenced on or before July 29, 2019, "objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition

Obligations, the Prepetition Liens or the Prepetition Loan Documents (as applicable) or otherwise asserting or prosecuting any other claims, counterclaims, causes of action, objections or challenges against the Prepetition Released Parties in connection with the Prepetition Obligations, the Prepetition Liens or the Prepetition Loan Documents[.]". [*Interim DIP Order* 34–35.] No such claim or contested matter was filed. Based on this, the Order directly contradicts the express language in the Interim DIP Order.

40. The DIP Objection was the only potential filing that would have impacted the release set forth in the Interim DIP Order. However, the DIP Objection did not contest the "amount, validity, perfection, enforceability, priority or extent of the Prepetition Obligations, the Prepetition Liens or the Prepetition Loan Documents." The DIP Objection did not assert or prosecute any claims against the "Prepetition Released Parties in connection with the Prepetition Obligations, the Prepetition Liens or the Prepetition Loan Documents." The DIP Objection only questioned the ability of the Bankruptcy Court to grant releases of such parties.[2] Given this, the claims asserted in the Complaint were released in connection with the Interim DIP Order. A contrary reading goes against the express language in the Interim DIP Order.

41. Beyond the Interim DIP Order, the Final DIP Order provided a separate and complete release to B&T from the actions asserted in the Complaint. Using nearly identical language to that in the Interim DIP Order, the Final DIP Order provided a broad release of claims to B&T as one of the Prepetition Released Parties.[3]

---

[2] Notably, the Response Brief makes no argument or suggestion that the DIP Objection prevented the releases in the Interim DIP Order from becoming effective.

[3] In the Response Brief, the Trustee challenged the extent of the release in the Final DIP Order, asserting that the release was limited. Unfortunately, this argument does not affect the scope of the release in the Interim DIP Order. Moreover, this argument would render much of the language in the Final DIP Order as mere surplusage. *Marbury v. Madison*, 5 U.S. 137, 180 (1803).

13

### D. Appeal of the Jurisdiction Ruling and the Release Ruling Will Materially Advance the Ultimate Termination of this Litigation.

42. The appeal of the Order will materially advance the ultimate termination of this litigation because, if the Order is reversed on either the Jurisdiction Ruling or the Release Ruling, then the adversary proceeding will be dismissed. If this Court does not address the Order now, the Bankruptcy Court may conduct a trial—even though it may later be determined that it lacked jurisdiction to do so. This would be an obvious waste of judicial resources. This meets the standard for materially advancing ultimate termination of the litigation. *E.g., Crystallex Int'l Corp. v. Petroleos de Venezuela, S.A.*, No. 15-1082-LPS, 2016 WL 7440471, at *2; *Stanziale v. Sun Nat'l Bank (In re Dwek)*, No. 3:09-cv-5046, 2010 WL 234938, at *3; *Popular Leasing U.S.A., Inc. v. Forman*, No. 09-2788, 2009 WL 2969519, at *5.

### E. Exceptional Circumstances Favor Interlocutory Appeal.

43. Finally, a party seeking leave to appeal an interlocutory order must establish that exceptional circumstances justify a departure from the basic policy of postponing review until after the entry of final judgment. *E.g., Crystallex Int'l Corp. v. Petroleos de Venezuela, S.A.*, No. 15-1082-LPS, 2016 WL 7440471 (D. Del. Dec. 27, 2016); *Popular Leasing U.S.A., Inc. v. Forman*, No. 09-2788, 2009 WL 2969519 (D.N.J. Sept. 14, 2009). There are exceptional circumstances justifying an interlocutory appeal here. First, the departure from required procedures is exceptional. Typically, a plaintiff would serve a complaint and a summons in compliance with the Federal Rules of Civil Procedure. Further, a plaintiff would take such action within the 90-day time period prescribed by Trial Rule 4(m). Here, the Trustee inexplicably ignored the clear and explicit language of the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure.

44.     Second, the Order provides no explanation or reasoning for the Bankruptcy Court's determination to deny the Motion to Dismiss. Oral argument was requested on the Motion to Dismiss, but the Bankruptcy Court did not afford the parties with this opportunity to be heard. Again, these procedural facts are exceptional.

45.     Third, the Order violates controlling case law in the Third Circuit: *Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565 (3d Cir. 1996). The Order provided no explanation as to why it diverged from *Ayres*. For the parties to continue litigating this matter, significant fees, costs, and expenses will be incurred. Moreover, this exact same issue—the applicability of *Ayres*—is likely to be raised at the conclusion of such litigation. Forcing the parties to proceed with litigation when there is controlling law that definitively resolves the matter is an exceptional circumstance warranting leave to appeal.

46.     Fourth, ignoring *Ayres* and its applicability to this case, the clear and unambiguous language of the Interim DIP Order and the Final DIP Order similarly resolves this action. The Order provided no explanation as to why this language was not valid or enforceable. Requiring the parties to proceed with litigation will result in significant time and money, both for the litigants and the court.

47.     Collectively, these factors evidence unique and unusual circumstances to warrant leave to appeal the Order.

## CONCLUSION

48.     For the foregoing reasons, B&T respectfully requests that the Court grant leave to appeal the Order as an interlocutory order, pursuant to the standards set forth under the law of this district and 28 U.S.C. § 1292(b), and grant B&T any further relief that Court finds just.

Dated: March 10, 2022
      Wilmington, Delaware

                                          BARNES & THORNBURG LLP

                                          */s/ Kevin G. Collins*
                                          Kevin G. Collins (DE No. 5149)
                                          1000 N. West Street, Suite 1500
                                          Wilmington, DE  19801
                                          Telephone: (302) 300-3434
                                          Facsimile: (302) 300-3456
                                          kevin.collins@btlaw.com

                                          *Counsel to Barnes & Thornburg LLP*