# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| JRV Group USA L.P._____Debtor. | Case No.: 19-11095 (KBO) |
| RC JRV Trust Co. LLC, in its capacity as Trustee of the Liquidation Trust of JRV Group USA L.P., <br><br> Plaintiff, <br><br> v. <br><br> Barnes & Thornburg LLP, <br><br> Defendant. | Adv. No. 21-51161 (KBO) |
| Barnes & Thornburg LLP, <br><br> Appellant, <br> v. <br><br> RC JRV Trust Co. LLC, in its capacity as Trustee of the Liquidation Trust of JRV Group USA L.P., <br><br> Appellee. | Appeal from the United States Bankruptcy Court for the District of Delaware <br><br> C.A. No. 22-mc-00120 (CFC) |

**PLAINTIFF RC JRV TRUST CO. LLC'S RESPONSE IN OPPOSITION TO BARNES & THORNBURG LLP'S MOTION FOR LEAVE TO ALLOW INTERLOCUTORY APPEAL OF THE ORDER DENYING THE <u>MOTION TO DISMISS THE COMPLAINT</u>**

RC JRV Trust Co. LLC ("Plaintiff" or the "Trustee"), in its capacity as Trustee of the Liquidation Trust of JRV Group USA L.P. (the "Trust, and JRV Group USA L.P, the "Debtor"), submits this response in opposition to Barnes & Thornburg

LLP's ("Defendant" or "B&T") *Motion for Leave to Allow Interlocutory Appeal of the Order Denying the Motion to Dismiss the Complaint* (the "Motion") and states as follows:

## PRELIMINARY STATEMENT

1. B&T's Motion seeking leave to appeal the Order[1] is entirely without merit and should be denied. B&T does not and cannot satisfy the standard for obtaining leave to file an interlocutory appeal, and appellate review of the Order is unnecessary and a waste of the Court's and parties' resources. B&T's complaints about its due process rights are wholly unpersuasive in these circumstances where B&T is unquestionably subject to personal jurisdiction in the District of Delaware and could not possibly be prejudiced by the Bankruptcy Court's decision to give the Trustee additional time to effect service (which was accomplished just four days after the entry of the Order).

2. The Bankruptcy Court did not commit any legal error in issuing the Jurisdiction Ruling or what B&T calls the Release Ruling, and B&T's Motion must be denied.

## FACTUAL BACKGROUND

3. The Complaint, filed September 14, 2021, seeks to avoid and recover

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them by the Motion.

2

from Defendant certain fraudulent and preferential transfers totaling $551,439.61. On the same day that the Complaint was filed, B&T, through Connie Lahn, the managing partner of its Minneapolis office, agreed to accept service of the Complaint via email (the First Email and Second Email). Despite B&T's acceptance of service by email and assurances over the course of months that B&T intended to respond to the Complaint if no settlement was reached in the interim, B&T contended in its Motion to Dismiss that the Complaint should be dismissed because a summons was not issued and served upon B&T during that time.

4. On October 18, 2021, a little over a month after B&T accepted service of the Complaint by email, B&T attorney Jonathan Sundheimer wrote to undersigned counsel concerning the purported release granted to B&T by the Interim DIP Order and Final DIP Order and asking that the Trustee dismiss the Complaint. On October 26, 2021, undersigned counsel responded to Mr. Sundheimer (copying Ms. Lahn) advising him that the Trust disagreed with B&T's position on the release issue and expected B&T to respond to the Complaint. B&T then went silent for more than a month.

5. On December 8, 2021, undersigned counsel emailed Mr. Sundheimer (copying Ms. Lahn) to advise him that a response to the Complaint was long overdue and to ask whether B&T intended to respond (the Third Email). Later that day, Mr. Sundheimer responded by saying that B&T was still "reviewing" the release

3

arguments from undersigned counsel's October 26 letter more than a month after it was sent to B&T, and Mr. Sundheimer stated that he would be in touch the following week (the Fourth Email). The following day, on December 9, undersigned counsel responded to Mr. Sundheimer (copying Ms. Lahn), noting that Ms. Lahn had accepted service of the complaint approximately three months before, that B&T had more than a month to consider the Trustee's arguments on the release issue, and that the Trustee was not willing to further extend B&T's time to respond to the Complaint beyond Friday, December 17 (the Fifth Email). At no point during any of the foregoing exchanges did anyone at B&T ever raise any concern about service of process or deny that Ms. Lahn accepted service of the Complaint on September 14.

6.   On December 8, 2021, undersigned counsel filed the Service Affidavit in response to seeing that the Bankruptcy Court's docket in the adversary case had been updated to reflect a deadline for service of process falling on December 13, 2021. On December 14, 2021, after that deadline passed, a representative of the Bankruptcy Court reached out to undersigned counsel to inquire about the fact that a summons had not been filed and whether the Trustee intended to proceed with the case. Undersigned counsel responded the same day, advising that the Service Affidavit had been filed and that B&T had accepted service of the Complaint on September 14, and offering to take any additional steps the Court may require concerning service. The Bankruptcy Court's representative asked undersigned

4

counsel to submit an additional affidavit confirming that B&T agreed to waive the necessity of a summons.

7. Accordingly, on the morning of December 15, 2021, undersigned counsel emailed Ms. Lahn (copying Mr. Sundheimer) and asked that she confirm the Trustee's understanding that by accepting service of the Complaint by email, B&T intended to waive the necessity of the Trustee getting a summons issued and serving B&T with it (the Sixth Email). Ms. Lahn did not respond. On December 16, undersigned counsel again emailed Ms. Lahn and asked that she respond concerning the issue of the summons that day (the Seventh Email). Again, Ms. Lahn did not respond.

8. Later on December 16, having received no response from Ms. Lahn, undersigned counsel emailed Mr. Sundheimer to ask whether B&T would respond to the Complaint on December 17 and to follow up again on the unanswered emails to Ms. Lahn (the Eighth Email). Mr. Sundheimer responded later that day, saying that Ms. Lahn had been "tending to other matters" and that B&T would respond to the Complaint on December 17, reserving all of its defenses (the Ninth Email). Undersigned counsel responded to Mr. Sundheimer (copying Ms. Lahn), noting the Trustee's presumption that the defenses B&T was reserving did not include belatedly disavowing the propriety of the service Ms. Lahn agreed to accept on behalf of the firm several months earlier, and which B&T had never raised as an

5

issue at any point since the filing of the Complaint on September 14 (the Tenth Email). Tellingly, Mr. Sundheimer did not respond.

9. On December 17, B&T filed its Motion to Dismiss and accompanying brief, mentioning the issue of defective service for the first time after months of what was clearly dilatory correspondence with undersigned counsel. The Response Brief was filed on January 14, 2022, and the Order was entered on February 24, 2022, denying B&T's Motion to Dismiss without prejudice.[2]

10. On February 28, 2022, B&T was served with a summons and the Complaint, both by first class mail to its Delaware registered agent and by personal service upon B&T partner Kevin G. Collins in B&T's Wilmington office at 1000 N. West Street, Suite 1500, Wilmington, Delaware 19801.

## ARGUMENT

**A. Applicable Legal Standard for Granting Interlocutory Relief**

11. "Under the standards of section 1292(b), an interlocutory appeal is permitted only when the order at issue (1) involves a controlling question of law upon which there is (2) substantial ground for difference of opinion as to its correctness, and (3) if appealed immediately, may materially advance the ultimate termination of the litigation." *Paragon Litig. Tr. v. Noble Corp. PLC (In re Paragon*

---

[2] While the Trustee requested oral argument on the Motion to Dismiss, B&T did not. B&T cannot now claim it was prejudiced when an oral argument it did not seek was not held.

*Offshore PLC)*, 2020 U.S. Dist. LEXIS 62552, at *5-6 (D. Del. Apr. 9, 2020) (citing *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974)). "Entertaining review of an interlocutory order under § 1292(b) is appropriate only when the party seeking leave to appeal 'establishes exceptional circumstances [to] justify a departure from the basic policy of postponing review until after the entry of final judgment.'" *Id.* at *6 (quoting *In re Del. and Hudson Ry. Co.*, 96 B.R. 469, 472-73 (D. Del. 1989), *aff'd*, 884 F.2d 1383 (3d Cir. 1989)). "Interlocutory appeal is meant to be used sparingly and only in exceptional cases where the interests cutting in favor of immediate appeal overcome the presumption against piecemeal litigation." *Id.* at *13. Additionally, "leave for interlocutory appeal may be denied for entirely unrelated reasons such as the state of the appellate docket or the desire to have a full record before considering the disputed legal issue." *Id.* (internal quotation omitted).

12.     The Trustee will address the first two of the above-described factors, as the Trustee does not believe that the third factor is meaningfully in dispute under these circumstances, except that it bears noting that the Trustee could simply have re-filed and served the Complaint and summons upon B&T if the Bankruptcy Court granted the Motion to Dismiss on the day it was filed, so the litigation would not have been ultimately terminated even if the Bankruptcy Court had made what B&T claims was the "correct" judgment.

### B. There is No Controlling Question of Law at Issue in B&T's Appeal

13. As B&T notes in its Motion: "A controlling question of law must encompass at the very least every order which, if erroneous, *would be reversible error on final appeal*." *Katz v. Carte Blanche Corp.* 496 F.2d 747, 755 (3d Cir. 1974) (emphasis added). Further, a proper interlocutory appeal "must concern a controlling question *of law*. A pure question of law is something the court of appeals could decide quickly and cleanly without having to study the record." *Gilmore v. Jones*, 2019 U.S. Dist. LEXIS 157329, at *9 (W.D. Va. Sep. 16, 2019) (emphasis added).

14. With respect to the Jurisdiction Ruling, the Order would not be reversible error on final appeal for several reasons, including that the Order conforms entirely to the Federal Rules of Civil Procedure (*inter alia*, Rule 4(m)), the Federal Rules of Bankruptcy Procedure (*inter alia*, Rule 7004(a)), and Third Circuit precedent (discussed in greater detail below), and any error resulting from the Order is plainly harmless because B&T is indisputably subject to personal jurisdiction in this District. Thus, the Jurisdiction Ruling does not present a controlling question of law. With respect to the Release Ruling,[3] B&T's position concerning the application

---

[3] Notably, the Bankruptcy Court denied the Motion to Dismiss *without prejudice* and did not directly address the release issue, likely recognizing that it involved disputed questions of fact and that nothing would prevent B&T from seeking dismissal of the case on the basis of the releases once the factual record was further

8

of the underlying plan releases to the Trustee's claims in this case involves disputed issues of fact that are not appropriate for an interlocutory appeal (namely, and among other possible factual issues, B&T claims to have been released in its capacity as counsel to a "Prepetition Lender," while the Trustee maintains that B&T received avoidable transfers directly from the Debtor in B&T's capacity as counsel *to the Debtor*).

### C. Substantial Ground for Disagreement Concerning the Correctness of the Order Does Not Exist

15.   Even if this Court is inclined to find that the Jurisdiction Ruling involves a controlling question of law, the great weight of precedent supports the Bankruptcy Court's Jurisdiction Ruling, and "substantial ground" for disagreement about it does not exist merely because B&T seizes upon the ruling in *a single case* with different facts.

16.   B&T relies entirely upon *Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565 (3d. Cir. 1996) for the proposition that the Complaint should have been dismissed due to the lack of service of a summons within 120 days from the filing of the Complaint. B&T completely ignores and conspicuously fails to address the great weight of adverse Third Circuit and other case law on point, all of which makes clear that the Bankruptcy Court acted within its broad discretion when it extended

---

developed. In that sense, there is no Release Ruling, and an interlocutory appeal on that issue is not appropriate at this time.

9

the time for the Trustee to effect service upon B&T. There is absolutely no basis for B&T's assertion that "the Order represents the Bankruptcy Court's disagreement with the holding in *Ayres*." (Motion at ¶ 38). When judges are given broad discretion to act based on the circumstances before them, even the same judge may rule differently from case to case without "disagreeing" with his or her prior rulings or those of other judges. Moreover, *Ayres* does not purport to overrule the decades of Third Circuit law adverse to B&T's position or make broad pronouncements about any change in the law of the Circuit, and it is sensible to limit *Ayres* to its unusual facts. No exceptional circumstances exist here that might justify an interlocutory appeal of the Order.

17.  In *Ayres*, the plaintiff had a process server drop off an unsigned summons she had prepared herself to the defendant law firm's office manager along with the complaint. 99 F.3d at 567. No one, much less a managing partner at the defendant law firm, agreed to accept service of the complaint on behalf of the defendants in *Ayres*. The defendant law firm moved to dismiss the complaint based on insufficient service of process, and its motion was initially denied due to the firm's failure to file a supporting brief. *Id*. at 567. Later, after months of discovery, the defendant law firm renewed its motion, which was granted. *Id*. The *Ayres* Court found no excuse for the plaintiff's total disregard for what the plaintiff viewed as "technical niceties" that were not important. *Id*. at 567-68.  In this case, by contrast,

a senior partner at B&T agreed to accept service on its behalf, and the Trustee's counsel has acted in good faith at all times, including correct the service issue immediately after the Order was issued.

18.     Importantly, the weight of precedent in the Third Circuit and elsewhere makes abundantly clear that B&T has failed to identify substantial ground for disagreement about the correctness of the Jurisdiction Ruling, as the Bankruptcy Court acted well within the scope of its broad discretion when it entered the Order. "Upon determining that process has not been properly served on a defendant, district courts possess broad discretion to either dismiss the plaintiff's complaint for failure to effect service or to simply quash service of process." *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992). "However, <u>dismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained. In such instances, the district court should, at most, quash service, leaving the plaintiffs free to effect proper service.</u>" *Id*. (citing *Richardson v. Ingram Corp.*, 374 F.2d 502, 503 (3d Cir. 1967), *cert. denied*, 389 U.S. 866 (1967) (emphasis added); *Novak v. World Bank*, 703 F.2d 1305, 1310 (D.C. Cir. 1983); 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1354 at 288-92 (1990)).

19.     The courts in Delaware and elsewhere in this Circuit have regularly heeded the Third Circuit's instruction to decline to dismiss a case where service remains a reasonable prospect. *See, e.g., West v. Coupe*, 2018 U.S. Dist. LEXIS

177876 (D. Del. Oct. 16, 2018) (denying motion to dismiss and noting that, "The Third Circuit has instructed that 'dismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained.'"); *Copia Communs., LLC v. AMResorts, L.P.*, 2017 U.S. Dist. LEXIS 94486 (E.D. Pa. June 20, 2017) (denying motion to dismiss and stating: "Where a plaintiff acts in good faith, but fails to effect proper service of process, courts are reluctant to dismiss an action…. Rather, courts will elect to quash service and grant plaintiff additional time to properly serve the defendant."); *Daoud v. City of Wilm.*, 894 F. Supp. 2d 544 (D. Del. 2012) ("[A]lthough the court concludes that service of process was insufficient, it may afford plaintiff another opportunity to attempt service in the event any of plaintiff's claims survive the [Rule 12(b)(6)] motion to dismiss."); *Aviation Exch. Corp. v. Nightclub Mgmt. & Dev.*, 2009 U.S. Dist. LEXIS 18668 (D. Del. Mar. 10, 2009) (finding that service of process was insufficient but extending the 120-day time limit for service "[b]ecause extending the time for service here will not, as far as the court is aware, prejudice any defendant").

20.     The Bankruptcy Court plainly recognized that effective service upon B&T remained a reasonable prospect, and that turned out to be the case when B&T was successfully served with the summons and Complaint at its Wilmington office just four days after entry of the Order. The fact that this Court has repeatedly entered orders very similar to the Order entered in this case (extending the time for service

of process) since the *Ayres* decision was issued refutes any argument by B&T that *Ayres* was intended to be construed in a way that revokes judges' long-standing discretion to extend the time for service where they deem it appropriate.

21. Further, any error inherent in the Jurisdiction Ruling (the Trustee maintains that there was no error at all) was harmless. B&T does not dispute, and cannot dispute, that it is subject to personal jurisdiction in the District of Delaware. The cases relied upon by B&T in its Motion[4] are wholly inapposite and involved situations where there were real questions about whether the defendants were actually subject to personal jurisdiction in the forum where suit was filed. None involved the court's exercise of its discretion to allow more time for the plaintiff to effect service of process on a defendant indisputably subject to personal jurisdiction in the forum. B&T has not been hauled into an unfamiliar forum where there is any

---

[4] *Facebook Inc. v. NameCheap Inc.*, 2021 WL 961771 (D. Ariz. March 15, 2021) (involving the question of "whether a forum selection clause can confer personal jurisdiction over a non-signatory defendant where the defendant's conduct is closely related to the contractual relationship"), *Gilmore v. Jones*, 2019 WL 4417490 (W.D. Va. Sept. 16, 2019) ("Where an online journalist or publisher with a national audience purposefully and primarily focuses their coverage underlying the suit-related conduct on forum-state events and persons, is such conduct sufficient for a forum court to assert specific personal jurisdiction over that journalist or publisher?"), and *Astrazeneca AB v. Aurobindo Pharma Ltd.*, 2014 WL 7533913 (D. Del. Dec. 17, 2014) ("The court is not familiar with any other judicial decision analyzing person jurisdiction in "Hatch-Waxman litigation," in the wake of the Supreme Court's ruling in *Daimler AG v. Bauman*, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014). The court agrees with Mylan that this is a controlling (and novel) question of law for which there is substantial ground for difference of opinion.").

doubt about the court's ability to exercise personal jurisdiction over it, and B&T's complaints about its due process rights are purely theatrical.

22. As discussed above, with respect to the Release Ruling, there is no pure question of law involved that might require the Court to consider where substantial ground for difference of opinion exists. Moreover, the plain language of the Interim DIP Order and Final DIP Order belies any suggestion that the claims asserted against B&T by the Trustee were previously released by the Debtors. At best, the question of whether B&T was released from the claims asserted by the Trustee is a *question of disputed fact* that is not appropriate for interlocutory appeal.

23. Notably, the pertinent release language states that B&T was being released "solely in their respective capacit[y]" as counsel to the Prepetition Lenders. The Trustee is not suing B&T in its capacity as counsel to the Prepetition Lenders, but rather as counsel to the Debtors who received preferential and fraudulent transfers from the Debtors. Neither of the DIP Orders provided for a release of the claims asserted by the Trustee here.

24. Additionally, the language of the Interim DIP Order concerning the finality of the releases makes clear that the adversary action filed by the Trustee was not the sort contemplated to be released, as the Interim DIP Order notes that the releases would become binding unless a proceeding or contested matter was commenced "*objecting to or challenging the amount, validity, perfection,*

*enforceability, priority or extent of the Prepetition Obligations, the Prepetition Liens or the Prepetition Loan Documents* (as applicable) or otherwise asserting or prosecuting any other claims, counterclaims, causes of action, objections or challenges against the Prepetition Released Parties *in connection with the Prepetition Obligations, the Prepetition Liens or the Prepetition Loan Documents*[.]" The underlying case here is not the sort of proceeding that the Interim DIP Order contemplated might affect the finality of the releases contained therein, precisely because the causes of action asserted against B&T are not the sort that were contemplated to be released. While it is possible that the Bankruptcy Court may eventually agree with B&T on the release issue, factual determinations must be made first.

25.     The Bankruptcy Court did not err by declining to dismiss the case based on the releases, and resolving the disputed factual issues concerning the applicability of the releases to the Trustee's claims at the motion to dismiss stage (when factual allegations must be construed in the light most favorable to the Trustee) would have been improper.

## **CONCLUSION**

26.     For all of the foregoing reasons, the Trustee respectfully requests that this Court deny B&T's Motion, deny B&T leave to appeal the Order, and grant the Trustee any further relief the Court deems just and proper.

Dated: March 24, 2022　　**GELLERT SCALI BUSENKELL & BROWN, LLC**
Wilmington, Delaware

　　　　　　　　　　　　　　*/s/ Bradley P. Lehman*
　　　　　　　　　　　　　　Michael Busenkell (No. 3933)
　　　　　　　　　　　　　　Bradley P. Lehman (No. 5921)
　　　　　　　　　　　　　　1201 N. Orange Street, Suite 300
　　　　　　　　　　　　　　Wilmington, Delaware 19801
　　　　　　　　　　　　　　Phone: (302) 425-5800
　　　　　　　　　　　　　　Facsimile: (302) 425-5814
　　　　　　　　　　　　　　Email: mbusenkell@gsbblaw.com
　　　　　　　　　　　　　　　　　　blehman@gsbblaw.com

　　　　　　　　　　　　　　*Counsel to the Trustee of the Liquidation Trust of JRV Group USA L.P.*

## CERTIFICATE OF COMPLIANCE

The foregoing Response complies with the Standing Order dated November 6, 2019. This Response has been prepared using Times New Roman 14-point typeface in Microsoft Word. This Response contains 3,280 words, as calculated by Microsoft Word.

Dated: March 24, 2022  **GELLERT SCALI BUSENKELL & BROWN, LLC**
Wilmington, Delaware

*/s/ Bradley P. Lehman*
Michael Busenkell (No. 3933)
Bradley P. Lehman (No. 5921)
1201 N. Orange Street, Suite 300
Wilmington, Delaware 19801
Phone: (302) 425-5800
Facsimile: (302) 425-5814
Email: mbusenkell@gsbblaw.com
blehman@gsbblaw.com

*Counsel to the Trustee of the Liquidation Trust of JRV Group USA L.P.*